Dunn v. Miller.

DUNN, *Appellant*, v. MILLER *et al.*

1. **Title to Land :** FORGED DEED : EQUITY : SUPREME COURT JURIS-
   DICTION.  Plaintiff's land was recovered in ejectment by one claim-
   ing under a forged deed.  It was afterwards discovered that the
   deed was a forgery and plaintiff brought ejectment, but defendant
   relied on the former owner's outstanding title instead of the deed,
   and plaintiff, not being able to show the forgery, the judgment,
   which was for plaintiff in the circuit and St. Louis court of appeals,
   was reversed in the supreme court.  ( 75 Mo. 260).  The defendant
   not having given a *supersedeas* bond, plaintiff, pending the appeal
   to the St. Louis court of appeals, was restored to the possession of
   the premises.  Plaintiff thereupon brought this suit in equity to
   cancel said forged deed and to annul the first judgment in eject-
   ment and all proceedings thereunder, and for an injunction forever
   enjoining defendants from taking possession under either of said
   judgments in ejectment.  *Held*—

   (1) That the suit was "a case involving title to real estate" and
       was therefore within the appellate jurisdiction of the supreme
       court ;

   (2) That it was competent for a court of equity to annul the
       forged deed, judgment and proceedings thereunder and to
       grant the injunction.

2. **Limitations.** The ten-year statute of limitations relating to
   actions for the recovery of land ( R. S. 1879, sec. 3219 ) is the one
   applicable to this suit.

3. ———— : CASE ADJUDGED.  Said statute began to run against plain-
   tiff in 1876, when he was ousted under the first judgment in eject-
   ment, and, having commenced his equitable action in 1882, he is
   therefore not barred by limitation.

*Appeal from St. Louis City Circuit Court.*—HON.
.ELMER B. ADAMS, Judge.

REVERSED AND REMANDED.

*W. H. Clopton* for appellant.

(1) Courts of equity will grant relief against a former decree where the same has been obtained by fraud and imposition. Hill. on Inj. [ 3 Ed.] p. 211, sec. 36 ; Story's Eq. Pl., [9 Ed.] sec. 426 ; Adam's Eq., 794 ; 1 High on Inj. secs. 47, 114, 116, 190, 203 ; *Davis v. Taleston,* 6 How. [U. S.] 120 ; *Hubbard v. Hobson,* 1 Breese [Ill.] 190 ; *Wingate v. Haywood,* 40 N. H. 441 ; *State ex rel. v. Engelman,* 86 Mo. 551. (2) The court may grant an injunction notwithstanding there has been an adverse decision at law. *Stewart v. Colwell,* 54 Mo. 536 ; *Mayberry v. McClurg,* 51 Mo. 256 ; *Dass v. Davis,* 60 Mo. 300 ; *Wilson v. Boughton,* 50 Mo. 17 ; *Case v. Cunningham,* 61 Mo. 434. Fraud vitiates all things. *Turner v. Turner,* 44 Mo. 535. (3) Courts cancel judgments not to make them void, but to put in imperishable form the fact that they are void. *Harris v. Terrell,* 38 Mo. 421 ; *Higgins v. Peltzer,* 49 Mo. 152. A judgment based upon a forged deed is void. *Jackson v. Somerville,* 13 Pa. St. 368 ; *Mitchell v. Kintzer,* 5 Pa. St. 218 ; *Farmer's case,* 3 Coke Rep. part 4, 77 ; *Edgell v. Sigerson,* 20 Mo. 497. (4) This is a real action. Actions are designated and limited in reference to the interest claimed by the demandant. Angell on Limitations, secs. 26, 341, 343 ; *Elmendorf v. Taylor,* 10 Wheat. 152, 176 ; *Duggan v. Gittings,* 3 Gill [Md.] 138, 161 ; 2 Story's Eq. J. sec. 1520 ; *Smith v. Davidson,* 40 Mich. 632 ; *Wright v. Le Claire,* 3 Ia. 221 ; *Williams v. Allison,* 33 Ia. 278. (5) Plaintiff's cause of action did not accrue until the discovery of the fraud. Angell on Lim., 183 ; 2 Story's Eq. J. sec. 1521*a* ; *Longworth v. Hunt,* 11 Ohio St. 194 ; *Rush v. Barr,* 1 Watts, 110 ; *Ferris v. Henderson,* 12 Pa. St. 49 ; *Kuhn's Appeal,* 87 Pa. St. 100 ; *Pugh v. Bell,* 1 J. J. Mar. 401 ; *Pyle v. Beckwith,* 1 J. J. Mar. 445 ; *Crane v. Praither,* 4 J. J.

Mar. 77; *Baker v. Grundy*, 1 Duvall [Ky.] 283; *Donnelly v. Donnelly*, 8 B. Mon. 119; *Stokes v. Van Leonard*, 8 Ga. 511, 515; *Snodgrass v. Bank*, 25 Ala. 161, 173; *Bescher v. Paulus*, 58 Ind. 271; *Payne v. Hathaway*, 3 Vt. 212; *Walker v. Walker*, 25 Ga. 76; *Way v. Culling*, 20 N. H. 187; *Hunter v. Hunter*, 50 Mo. 445. (6) This suit is within the meaning of Revised Statutes, section 3739. *Harney v. Charles*, 45 Mo. 157; *Buel v. Transfer Co.*, 45 Mo. 565; *Shaw v. Pershing*, 57 Mo. 414; *Briant v. Fudge*, 63 Mo. 489; *Woods v. Nortman*, 85 Mo. 305; *Chouteau v. Rowse*, 90 Mo. 195.

*R. A. Bakewell*, also for appellant.

(1) At the time of the passage of the act of congress of June 30, 1864, plaintiff's grantor had in him the equitable title by the statute of limitations; and the act of congress was, therefore, effectual to pass the title of the United States to plaintiff's grantor in possession, as the legal representative of the original owner of the New Madrid certificate. *Gibson v. Chouteau*, 13 Wall. 92; s. c., 39 Mo. 536; *Hammond v. Coleman*, 4 Mo. App. 307; *Cummings v. Powell*, 16 Mo. App. 559. (2) This action involves title to real estate; falls within article 1 of the statute of limitations; and was brought within the time limited by the statute. *Wait v. Maxwell*, 5 Pick. 517; *Williams v. Sweetland*, 10 Iowa, 51; *Perkins v. Blood*, 36 Vt. 273; *Jackson v. Somerville*, 13 Pa. St. 368; *Bobb v. Woodward*, 50 Mo. 103; *Rogers v. Brown*, 61 Mo. 187; *Thomas v. Matthews*, 51 Mo. 107. (3) No provision of the statute of limitations not embraced in section 3219, Revised Statutes, has any application to the present action; and this action is not barred on equitable principles. *Elder v. Brindley*, 2 Sneed, 247; *Kirkman v. Hamilton*, 6 Pet. 20; *Hazel v. Selby*, 11 Ill. 9; *Jacob v. U. S.*, 1 Brock. C. C. 523; *Smith v. Lockwood*, 7 Wend. 241; *Pease v. Howard*, 14 Johns. 478;

*Strode v. Stafford Justices,* 1 Brock. 162; *Hodgden v. Hamden,* 2 Sand. 64; *Rogers v. Brown,* 61 Mo. 187, 195; *Pennock v. Hart,* 8 Serg. & R. 376; *Troupe v. Smith,* 20 Johns. 33; Roberts' Fraud, 529, ch. 5, sec. 1; *Alden v. Gregory,* 1 Eden, 285; *Prevost v. Gratz,* 6 Wheat. 481.

*A. R. Taylor,* also for appellant.

*Hitchcock, Madill & Finkelnburg* for respondent, Kate C. Miller.

(1)   The defense of the statute of limitations, being properly pleaded, and sustained by the circuit court on the proof. is not answered by assertions that the fraud alleged in the petition herein was nevertheless committed, and that appellant is therefore entitled to the relief prayed, in spite of the statute.   Such assertions and supposed arguments based thereon, are merely invitations to this court to disregard the law.   If the plaintiff's alleged right of action was barred by the statute of limitations on or before the date when this suit was brought, that was a complete defense which the circuit court was bound to sustain, and which must be affirmed by this court.   *Rogers v. Brown,* 61 Mo. 192; citing *McIver v. Ragan,* 2 Wheat. 29; *Bliss v. Prichard,* 67 Mo. 190; *Gordon v. Lewis,* 88 Mo. 381.   (2)   This court has settled the law that the respective periods of limitation prescribed by the Missouri statute (R. S., 1879, ch. 48), for the several classes of actions therein mentioned apply to all civil actions, whether such as formerly denominated actions at law or suits in equity.   No court of this state is authorized to prescribe or permit a different period of limitation in any civil action, whether the relief sought therein be legal or equitable, from that fixed for such action by said statute.   *Gordon v. Lewis,* 88 Mo. 381; *Kelley v. Hurt,* 74 Mo. 572, 573; s. c., 61 Mo. 466; *Rogers v. Brown,* 61 Mo. 192.   (3) The provisions of section 3239, Revised Statutes, 1879, do

not apply to this action.   *Buel v. Transfer Co.*, 45 Mo. 563, 564; *Lottman v. Barnett*, 62 Mo. 170; *Shaw v. Pershing*, 57 Mo. 422; *Bryant v. Fudge*, 63 .Mo. 490. (4) This suit precisely answers the statutory description (sec. 3230, Rev. Stat., 1879),—"an action for relief on the ground of fraud."   *Rogers v. Brown*, 61 Mo. 191, 194; *Hunter v. Hunter*, 50 Mo. 445; *Bobb v. Woodward*, 50 Mo. 95, 103; *Buren v. Buren*, 79 Mo. 542; *Gordon v. Lewis*, 88 Mo. 381.   (5) This is not "an action for the recovery of any lands, tenements, or hereditaments, or for the recovery of the possession thereof."   It does not, therefore, fall within the provisions of section 3219, Revised Statutes, 1879, prescribing a ten-year limitation.   Nor does this action fall within section 3229, Revised Statutes, 1879, prescribing a ten-year limitation for "actions for relief, not herein otherwise provided for."   See cases above cited;   also, *County v. Sappington*, 64 Mo. 72;   *McClurg v. Phillips*, 49 Mo. 316. (6) Plaintiff had constructive notice of the Sarah Lucas deed from the date of its record in St. Louis county, on February 26, 1872.   This suit was therefore barred from and after February 26, 1877; but it was not brought till May, 1882.   *Thomas v. Mathews*, 51 Mo. 107; *Rogers v. Brown*, 61 Mo. 187; *Gillespie v. Stone*, 70 Mo. 507; *Hughes v. Littrell*, 75 Mo. 573; *Funkhouser v. Lay*, 78 Mo. 466.   (7) If section 3219 applies to this case, then the ten-year limitation was absolute; the statute began to run from the time the fraud complained of was committed by forging the deed (as alleged) and it is immaterial at what time Dunn received notice thereof. Under that section the statute began to run against plaintiff not later than February 26, 1872, the day on which the Sarah Lucas deed was recorded in St. Louis county, there being no allegation or proof that George C. Miller, or those claiming under him, did, at any time after February 26, 1872, "by absconding or concealing himself, or by any other improper act, prevent the commencement of an action" by this plaintiff, which is the

only exception to said section 3219. *Tapley v. McPike*, 50 Mo. 589, 591; *Rogers v. Brown*, 61 Mo. 192, 194; *Gillespie v. Stone*, 70 Mo. 507; *Hughes v. Littrell*, 75 Mo. 575; *Funkhouser v. Lay*, 78 Mo. 466.

*D. T. Jewett* for respondents.

*Henry H. Denison* for respondent E. C. Smith.

BRACE, J.—On the ninth of June, 1873, George C. Miller obtained judgment in the St. Louis circuit court against John A. Dunn, the plaintiff herein, in ejectment, for the recovery of the possession of the premises described in plaintiff's petition. On appeal to the supreme court, this judgment was affirmed on the twenty-eighth of February, 1876 (*Miller v. Dunn*, 62 Mo. 216), and on the sixth of April, 1876, Dunn was evicted and Miller put in possession of the premises by virtue of final process of said circuit court upon said judgment.

The questions adjudicated in that case appear in the following statement of NAPTON, J.: "This is an action of ejectment to recover a tract of land included in United States survey 2541, which was made under New Madrid certificate number 164, in the name of John Brooks or his legal representatives. The record of the trial shows that both parties claim under Charles Lucas who bought of Brooks in 1807. Charles Lucas, on December 4, 1808, by a marriage contract with Sarah Graham, conveyed his property to her in contemplation of marriage which was recorded April 29, 1809. During the marriage Charles Lucas conveyed this property to one Turner and from Turner the title passed through various persons to defendant. After the death of Lucas, his wife conveyed the same property to one Gillispie, and plaintiff possesses the title so acquired. On the trial the plaintiff had judgment. There seems to be only two questions involved in this case. First, as to

the validity and effect of this marriage settlement on Sarah Graham, and her conveyance after the death of her husband; and second, as to the statute of limitations. There is no dispute as to the possession of defendants claiming under Charles Lucas for more than twenty years before suit, but as the legal title never passed from the United States until the act of congress of 1864, our state statute of limitations was no bar under the decision of the supreme court of the United States in *Chouteau v. Gibson*, * * * therefore, although entertaining the same opinion as the counsel for defendants in regard to the effect of that decision as overturning and destroying many *bona-fide* possessions acquired and retained on the faith of our state laws and state decisions under these laws, we have no alternative but to pursue the same course taken in the case of *McElhinney v. Ficke*, 61 Mo. 329." *Miller v. Dunn, supra.* The court in the opinion then proceeded to the consideration of the first question stated and resolved that also in favor of the plaintiff (Miller).

In this case, plaintiff Miller introduced in evidence, as links in his chain of title to the premises, a deed from Sarah Lucas to Andrew P. Gallaspie dated March 23, 1821, purporting to be signed by her mark, and witnessed by Stephen Ross, Thomas Philips and Mark H. Stallcup, written upon a half-sheet of old paper marked "Budgen 1799," folded in the middle, forming a sheet about the size of an ordinary sheet of letter-paper, on the first two pages of which was written the body of the deed and on the third appears an affidavit of Ross and Stallcup, proving the execution of said deed, purporting to have been taken April 21, 1821, before C. G. Houts, clerk of the circuit court of New Madrid county, attached to which is a certificate of the recorder of St. Louis county, that the same was filed for record in his office on the twenty-sixth of February, 1872; two deeds from Andrew P. Gillespie to William W. Gitt, one dated

June 27, 1846, the other dated February 3, 1847, both filed for record in St. Louis county in May, 1872, and a deed from Gitt to one Silver, dated March 22, 1872, in whose name the suit was instituted on the sixteenth of May, 1872, for the benefit of Gitt, at whose request Silver afterwards, pending the suit, executed a deed for the premises to George C. Miller in whose name it was prosecuted to judgment for the benefit of Gitt and Miller.

While this suit was pending in the supreme court, one James Reed was arrested in Quincy, Illinois, for forging titles to lands in Illinois. In his trunk was found "forged material and forger's material, such as seals or impressions of seals on sealing wax of notaries public, commissioners of deeds, court seals, city seals, state seals, blank paper with water-marks of names of different manufacturers having dates of different periods of time, printed blanks of deeds, a great quantity of old genuine deeds and documents containing signatures and seals of a great number of persons, which deeds, to a large extent, had been mutilated and defaced by having the seals, or impressions of seals, taken from them and the signatures traced from them." Among the old deeds and documents thus found, were several of different dates from 1816 to 1823, containing the signatures of the said Ross, Stallcup and Houts, as also "a wax seal with the impression on it, 'Circuit Court Seal, New Madrid County, 1819,' with device of seals upon it," and "a blank sheet of paper having a water-mark on one page 'Budgen 1799'; on the other page, 'crown and scroll,' a device." Pending his examination in Chicago, Reed confessed that the deed from Sarah Lucas to Gillaspie was a forgery; that he got it up himself for old Dr. Gitt at the Southern hotel in St. Louis. The disclosures following the arrest of Reed touching the character of the Sarah Lucas deed coming to the knowledge of Dunn, plaintiff herein, *he*, on the second day of February,

1877, commenced an action in ejectment against Miller to recover possession of the premises from which he had been ousted by Miller under his judgment, and on the eleventh day of October, 1877, obtained judgment in the St. Louis circuit court for such recovery; to reverse which Miller, on the second day of December, 1878, sued out a writ of error from the St. Louis court of appeals, but not having obtained a *supersedeas*, on the eighteenth of December, 1878, by virtue of process from said circuit court on said judgment, Miller was evicted from and Dunn restored to the possession of the premises. On the twenty-third of March, 1880, the judgment of the circuit court in favor of Dunn was affirmed by the court of appeals (8 Mo. App. 467), whereupon Miller appealed to the supreme court, where, on the sixth of March, 1882, the judgment of the circuit court and court of appeals was reversed and the cause remanded. *Dunn v. Miller*, 75 Mo. 260.

In the first suit, Miller being out of possession, could not have recovered without introducing the Sarah Lucas deed; in the second suit, being in possession, he rested his case upon the outstanding title of Sarah Lucas and gained his suit without introducing that deed. The evidence offered by Dunn for the purpose of showing that it was a forgery, could avail him nothing and was, of course, rejected. At this stage of the controversy, on the eighteenth of May, 1882, Dunn commenced the present action, which is in the nature of a bill in equity, against the defendants' representatives, assignees and privies of Miller who died in 1879, and to whom Gitt theretofore had relinquished all his interest in the premises. The amended petition on which the case was tried, after setting up both plaintiff's and defendants' claim of title, as they were shown in the preceding ejectment suits, the adverse possession of plaintiff and those under whom he claims since March, 1819, and the history of the preceding litigation between the parties,

Dunn v. Miller.

alleges in substance that said paper purporting to be a deed from Sarah Lucas to Andrew P. Gillespie is a forgery ; that he had no knowledge or information that the same was a forgery at or before the time when the judgment of the ninth of June, 1873, under which he was dispossessed of the premises, was obtained against him ; that said judgment was obtained by the fraudulent use of said forged deed in evidence in that case, and prays that said forged deed may be cancelled, that said judgment be declared null and void, that plaintiff be restored to all that he lost by reason of said judgment, that defendants be enjoined from taking any action under the judgment and mandate of the supreme court in said second action of ejectment, and from proceeding thereunder to obtain possession of the premises before final hearing herein ; that on final hearing possession of the premises be decreed to plaintiff and for perpetual injunction and general relief.

The defendants demurred to the petition on the ground that plaintiff's cause of action was barred by the statute of limitations ; the demurrer was sustained as to Jewett and Smith, but overruled as to the other defendants, who then answered, denying specifically all the material allegations of the petition and setting up the statute of limitations. Upon this answer the case was tried, and plaintiff's bill dismissed on the ground that his cause of action was barred by the statute of limitations. Final judgment having been rendered in favor of all the defendants, plaintiff appealed to the St. Louis court of appeals, from which the case was transferred to this court under the late amendment to the constitution.

I. In the court of appeals a motion was made to set aside the order transferring the cause to this court, on the ground that this is not "a case involving title to real estate" within the meaning of section 12, article 6, of the constitution, which was overruled by that court,

and in this court on the same ground, a motion was made to remand the cause to the court of appeals. This motion was overruled *pro hac vice*, and reserved for determination on final hearing, and presents the first question for consideration. It will be observed from the foregoing statement, that the plaintiff Dunn, by his action of ejectment, accomplished nothing in contemplation of law towards recovering the possession of the premises which he lost by the preceding suit, and his legal status with respect to that possession, is the same as if he been actually evicted by process under the judgment in the second ejectment, which would have taken place but for the injunction process in this case. Viewed from that standpoint, it will also be observed that this is an action to annul the judgment by which he lost that possession, to cancel the deed by means of which he lost, and to recover that possession. It will also be observed that Miller was enabled to obtain that judgment by means of a paper title derived through the deed sought to be cancelled, and which was held to be superior to the possessory title of Dunn, by which he and his grantors had held it for more than twenty years.

It is beyond dispute that an action at law in ejectment is a case within the meaning of the phrase, "involving title to real estate," in section 12, article 6, *supra*. The object of that action is the recovery of the possession of real estate. The means by which it is accomplished, showing title or right to possession, the object of this action, the recovery of the p ossession of real estate, is the same, the means by which it is sought to be accomplished the same, *i. e.*, by showing that the possessory title which Dunn had, or his right to be then in possession, is superior to the paper title of Miller by means of which that right to possession was withdrawn from him. The adjudication in this case then involves the possession of Dunn, his right to that possession and the right of Miller to that possession ; in other words,

the titles of both Dunn and Miller, as they were adjudicated in the ejectment suit, are involved in this as they were in that; and to the same extent that title is involved in every ejectment suit. The term "possessory title" has not been inconsiderately used. Ejectment is a possessory action. Title to real estate is involved in ejectment only as an incident to possession upon which the action is based. The title is presumed to be with the possession. Adverse possession is *prima-facie* evidence of title; he who has it need do nothing in the first instance when attacked in ejectment. If adverse and continuous for a period prescribed by statute, the presumption becomes conclusive. Thus it is that adverse possession confers title, he who has such an one has no occasion for a paper title, and although this case should not involve the adjudication of any paper title in him, or of an absolute title by limitation, it directly and necessarily adjudicates Dunn's right to the possession of the premises which he lost by that ejectment suit as against Miller's paper title, which is the substance of all that an ejectment suit determines in any case, a judgment in which does not imply absolute ownership against all the world; it implies only the right to possession as between the parties; against some other person, neither party may have right or title; nor does it even imply absolute ownership between the parties; if it did, a second action could not be maintained between the same parties for the same premises. Title then to real estate, to the same extent and in like manner, is involved in this, as in an action of ejectment, and this is "a case involving title to real estate" within the meaning of the provision in the constitution cited conferring final appellate jurisdiction in such cases upon this court. The ingenious argument of counsel for defendants on this motion proves too much. It would deprive this court of appellate jurisdiction, not only in equitable cases analogous to the only action at law extant for the trial of title to real estate, but of such jurisdiction in

all actions in ejectment. In practice it ought not to be difficult to distinguish a case analogous to such a mixed action operating directly on the possession and the right to possession of real estate and those purely personal actions in which it is sought to establish a right in or to real estate by which, as a consequence, the right or title may be affected, as indicated in *State ex rel. v. Court of Appeals*, 67 Mo. 199.

II. On the record proper, two questions are presented for discussion, one of fact and one of law: Of fact, whether the paper purporting to be a deed from Sarah Lucas to Gillaspie is, or is not, a forgery? Of law, whether plaintiff's cause of action for the recovery of the possession lost by the use of that paper in evidence in the ejectment suit is barred by the statute of limitations? As to two of the defendants, Jewett and Smith, the question of fact is settled by their demurrer, upon which they stood and had judgment. The allegation of forgery as to them stands admitted on the record. As to the other defendants, the issue of fact was tried upon the bill and answer and the evidence, and plaintiff's bill dismissed, and whatever the reasons assigned for such dismissal, as to them, remains to be determined on review of all the evidence preserved in this voluminous record. After a careful perusal of that record, the necessity for which has somewhat delayed the rendition of a decision herein, a critical examination of the paper purporting to be a deed from said Lucas to said Gillaspie, in connection with the original exhibits transmitted to this court, and a careful consideration, analysis and classification of the whole volume of evidence in the case, the conviction is irresistibly forced upon our minds that the paper in question is a forgery, and that it was forged by Reed, at the instance and by the procurement of Gitt, and for the purpose for which it was used. And unless plaintiff's cause of action is barred by limitation, he ought in equity to have the relief prayed for.

The flexible and extraordinary powers of a court of equity are invoked in this case to remedy a wrong, for which a court of law furnishes no remedy. The plaintiff, under the forms of the law, has been wrongfully ejected from premises of which he was in the lawful possession by a fraud perpetrated on him and the courts, at a time when he had an absolute title by possession impregnable to honest attack. The relief that he asks is the restoration of the specific thing which he lost by that fraud. This fraud, begotten when the forged deed was concocted, brought forth when that deed was recorded, assumed the mien and form of an honest child, and as such was put to nurse in a court of law, where, its vicious character undiscovered and unsuspected, it grew to a noxious maturity in the judgment of the court; and on the sixth of April, 1876, was by its strong arm put into possession of the plaintiff's birthright, about which time—its character suspected, but not really known—the plaintiff petitioned for the restoration of his property, and tendered evidence tending to impeach its legitimacy. But the court that *deprived* him was powerless to *restore* him—powerless even to hear his testimony. In this emergency, on the eighteenth of May, 1882, he appealed for relief to a court of equity. That it has the power to stamp out of existence such a vicious thing, and tear up by the roots the deadly upas which has protected it thus far, there can be no doubt.

Equity, however, gives relief only to the diligent. Has the plaintiff been slothful or negligent in applying for it, is the question remaining to be determined, and for its determination resort must be had to the statute of limitations for the ascertainment of the period of time, by which an analogous case at law would be barred, also for the date at which that period would begin to run, it having been held by this court that the statute of limitations applies to all civil

actions, to those which were formerly denominated suits in equity, as well as to actions at law. *Gordon v. Lewis*, 88 Mo. 378; *Kelly v. Hurt*, 74 Mo. 572; s. c., 61 Mo. 466; *Rogers v. Brown*, 61 Mo. 192.

Since the Revision of 1835, all actions in the statute of limitations have been classified under two heads, "Real Actions," or actions relating to real estate, and "Personal Actions," or actions other than those relating to real estate. Real actions, as at common law, never had an existence in this state, and we must look from the title to the text to learn what actions are meant by the term "Real Actions," as used in the classification of 1879, where a specific definition may be found in the language of section 3219, article 1, as follows: "No action for the recovery of any lands, tenements or hereditaments, or for the recovery of the possession thereof, shall be commenced, had or maintained by any person * * * unless it appear that the plaintiff * * * or other person under whom he claims was seized or possessed of the premises within ten years before the commencement of such action." The statutory action of ejectment is the form of action provided by law for the recovery of the possession of premises in all cases where the plaintiff is legally entitled to the possession thereof (R. S., 1879, sec. 2240), "against any person not having a better title thereto." *Ib.* sec. 2241.

In this form of action alone, is right to the possession of real estate by superior title tried in an action at law. To this action at law, and such actions in equity as are analogous to it, section 3219, *supra*, is alone applicable. It is based upon the possession, runs against him only who is out of possession, and can be invoked only for the protection of one who is in possession. To such actions, the various sections of the statute classified under the head of "Personal Actions" (R. S. 1879, art. 2), one of which, section 3230, is pleaded and relied upon as a bar to this action, have no application. This action cannot be classified as a personal action. It

goes to the possession and the right to the possession of real estate, and as we have seen, is as closely analogous to an action in ejectment as it is possible for any action in equity to be, and if barred at all, is barred under the provisions of section 3219, because the plaintiff and those under whom he claims have not been seized or possessed of the premises within ten years before the commencement of this suit.

For nearly sixty years prior to the sixth day of April, 1876, when the plaintiff was ousted under the fraudulent judgment in ejectment obtained by Miller, the plaintiff and those under whom he claims had claimed under color of title and had exercised acts of ownership over the premises ; and for thirty-five years had been in the actual, open, notorious and continuous adverse possession thereof, claiming title thereto against all the world. At that date plaintiff had an absolute title to the premises by limitation. On that day, he was dispossessed by fraud ; the process of the court by which it was accomplished and the judgment upon which that process was issued were the fruits of fraud. In contemplation of a court of equity, as between the parties, they will be treated as nullities from which no rights can be deduced by relation or otherwise. So far as the defendants are concerned, they are in no better position by means thereof than if they had taken possession of the plaintiff's premises on that day *vi et armis*. Since that day the plaintiff, in contemplation of law, has been out, and the defendants have been in possession of the premises. But on the seventeenth of May, 1882, less then ten years after the plaintiff was thus dispossessed, he commenced this action to recover that possession and his action is not barred by the statute of limitations.

On the law and the facts, the decree in the circuit court should have been for the plaintiff. The judgment of said court is therefore reversed and it is ordered that a decree be entered here, cancelling said forged paper

Johnson v. The Mo. Pac. Ry. Co.

purporting to be a deed from Sarah Lucas to Andrew P. Gillespie, dated March 23, 1821, and the record thereof; declaring null and void the judgment rendered in favor of George C. Miller against the plaintiff, John A. Dunn, by the circuit court of St. Louis on the ninth day of June, 1873; the execution and return thereon, and the records thereof, and forever enjoining the defendants herein from taking any action under said judgment or under the judgment of the supreme court of Missouri, entered on the sixth of March, 1882, reversing and remanding to the St. Louis circuit court, the cause of John A. Dunn *vs.* George C. Miller's heirs; to obtain possession of the premises described in plaintiff's petition, and decreeing the right to the possession of said premises to be in the plaintiff. All concur, except RAY, J., absent.

*On motion for rehearing.*

BRACE, J.—The motion for rehearing herein is overruled and the opinion modified so that instead of a decree being entered here as therein directed, it is ordered that this cause be reversed and remanded to the circuit court of St. Louis city, with directions to said court to enter up a decree in favor of the plaintiff against all of the defendants except Jewett and Smith in conformity with the opinion, without prejudice to the right of the said defendants Jewett and Smith to join issue by answer to the allegations of the petition and have their issue tried if they are so disposed. All concur, except RAY, J., absent.