THE STATE OF MISSOURI, at the Relation of and
to the Use of T. J. DOUGLASS, Collector of the
Revenue of DUNKLIN COUNTY, MISSOURI,
and for the Benefit of DRAINAGE DISTRICT
NUMBER FOUR OF DUNKLIN COUNTY,
MISSOURI, Appellant, v. C. C. REDMAN, Re-
spondent.

**Springfield Court of Appeals, May 19, 1915.**

**COURTS: Jurisdiction: Construction of Revenue Laws.** In an
action for delinquent drainage ditch tax based on an assess-
ment against defendant's land under Secs. 5578-5635, R. S.
1909, a construction of the revenue laws of the State is in-
volved and the Supreme Court has jurisdiction of the appeal.

Appeal from Dunklin County Circuit Court.—*Hon.
W. S. C. Walker,* Judge.

TRANSFERRED TO THE SUPREME COURT.

*Fort & Zimmerman, Ely, Pankey & Ely,* and *Oliver
& Oliver* for appellant.

*Bradley & McKay* for respondent.

STURGIS, J.—This is a suit for delinquent drain-
age ditch taxes assessed against land owned by defend-
ant. The suit is brought in the name of the State at
the relation of the collector of the revenue of Dunklin
county, Missouri, for the use and benefit of drainage
district numbered four of that county. The record dis-
closes that such drainage district is one formed under
the supervision of the county court as provided by ar-
ticle 4, of chapter 122, Revised Statute 1899, which, as
amended in 1905, is now article 4, of chapter 41 (secs.
5578-5635), Revised Statutes 1909. The controversy is
as to the amount of special taxes properly assessed
against this land, the defendant conceding and offer-

ing to pay $59, while plaintiff demands $115.56. The
amount defendant concedes and is offering to pay is the
original (annual) assessment made or confirmed by the
county court under section 8288, Revised Statutes 1899
(Sec. 5588, R. S. 1909), and apportioned into install-
ments under section 8300, Revised Statutes 1899 (Sec.
5601, R. S. 1909). It appears that the county court
some five or six years after the drainage district was
formed and the confirmation of the original assess-
ments made by the viewers and engineers appointed for
that purpose undertook, by its order of April 29, 1912,
to "rearrange" and increase the amounts of the an-
nual installments yet to fall due for the years 1912 to
1924 inclusive. The occasion for making this order, as
we gather from the record, is that because of some er-
ror the county court issued and sold bonds to the
amount of nearly $56,000, but levied assessments
against the lands within the district for an amount of
only about $36,000. The increased assessments are to
cover this deficiency of some $20,000, and provide a
fund, otherwise insufficient, to pay the bonds at ma-
turity. It is agreed that if the county court had power
and authority to make this order of April 29, 1912, in-
creasing the annual assessments, then the amount de-
manded is due; otherwise only the amount tendered is
due. The defendant contends that the county court ex-
hausted its power to make assessments in its order con-
firming the report of the viewers and engineers in con-
nection with the formation of the district and could
not at a later date make another order increasing the
amounts then assessed.

The defendant's answer contains these allegations:
"And defendant further answering says that plaintiff
is attempting to collect from him a second assessment
which was made without notice to defendant, and de-
fendant says that the county court of Dunklin county,
Missouri, had no authority to make such second as-
sessment, as was done in this instance, inasmuch as

such second assessment was made without any notice and made after the completion of the work to be done in said drainage district and was made without due process of law, and it constituted the tak-' ing of private property for public use without compensation in violation of the Federal and State Constitution, to-wit: Section 1 of the fourteenth amendment of the Constitution of the United States, and section 30 of article 2 of the Constitution of the State of Missouri. Wherefore, defendant says that said second assessment or arrangement wherein his taxes were increased from $59 to $115.56, is null and void and of no effect and he asks judgment canceling said order of the said county court for the reason that the same is null and void and without authority and in violation of both the Federal and State Constitutions and that plaintiff may be compelled to accept the said sum of $59, the original amount due under the original assessment made by the viewers and engineer in said drainage district and confirmed by the final order of the county court in approving the final report of the said viewers and engineer in said drainage district.'' In this connection the record shows that no notice was given to the landowners as to the action of the county court in making this order of April 29, 1912, increasing the assessments. The plaintiff's contention is that the landowners were already in court for this purpose because of receiving notice of the original proceedings.

In addition to the constitutional questions thus injected into this case, we are at once confronted with the question of our jurisdiction of this appeal because of involving a construction of the revenue laws of this State. This court has recently transferred to the Supreme Court of this State the case of State ex rel. County Collector v. Oliver, 172 S. W. 75, on this ground. There is no doubt that if the statutes above referred to, providing for the assessment and collection of taxes against property in these drainage districts, are reve-

nue laws of the State, then this case involves a construction of the same. The Oliver case, supra, gives our reasons for holding that these laws are ''revenue laws of the State,'' and such reasons need not be repeated.

Because of the constitutional questions raised, and because this case involves a construction of the revenue laws of the State, this case is transferred to the Supreme Court.

*Robertson, P. J.,* and *Farrington, J.,* concur.